# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

GOODMAN DISTRIBUTION, INC.,     )
                                )
           Plaintiff,          )
                                )
        v.                 )          No. 4:10-CV-806 CAS
                                )
MARY HAAF, et al.,            )
                                )
           Defendants.      )

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). In the alternative, defendants move to dismiss for improper venue pursuant to 28 U.S.C. § 1391, or to transfer to the Western District of Missouri, pursuant to § 1404. Defendants also move to strike Exhibit C from the complaint pursuant to Rule 12(f). The motions are fully briefed and ripe for review.

## I. Background

Plaintiff Goodman Distributing, Inc. ("Goodman") brings its complaint against defendants Mary Haaf and Herb Haaf Heating and Cooling, Inc. ('Herb Haaf, Inc.") for violations of state law.[1] Plaintiff alleges this Court has subject matter jurisdiction over its claims pursuant to 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy exceeds $75,000.00.

According to the complaint, Goodman is in the business of designing, selling, and distributing heating and air conditioning equipment. Defendant Herb Haaf, Inc. is a dealer and

---

[1]Plaintiff originally brought a claim against Mary Haaf pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"). Plaintiff has since dismissed its RICO claim.

service contractor of heating and air conditioning equipment, and Mary Haaf is an officer, director and technician of the company.

The complaint arises from an alleged scheme by Mary Haaf to submit fraudulent warranty claims to Goodman. Goodman states that at some point in time it recognized that certain service valves on its equipment had a tendency to leak. In response, plaintiff instigated a cap replacement program, under which service technicians would replace existing service valve caps with newly designed o-ring service valve caps. Under the program, Goodman agreed to pay its dealers and service contractors $150.00 for labor costs associated with replacing the caps, and an additional $50.00 if the technician determined the unit was leaking and needed to be refilled or recharged. Under the cap replacement program, technicians were required to have access to the thermostat inside the residence or building. To receive compensation under the program, which was limited to $200.00 per unit, a service contractor or dealer was required to submit a warranty claim for each unit requiring repair by mailing the completed form to Goodman's regional office or its corporate headquarters in Texas.

Goodman alleges Mary Haaf devised a scheme to submit false and fraudulent warranty claims. Goodman alleges between approximately August 21, 2009, and October 16, 2009, she submitted over 375 false claims. A list of the claims with the claim numbers, unit serial numbers, dates of approval, and check numbers is attached to the complaint as Exhibit B. According to Goodman, these claims were fraudulent in that: the work required to charge the unit has not been done; the work performed was not necessary; the unit was no longer under warranty; and/or the maximum $200.00 per unit limit under the cap replacement program had already been paid.

Goodman states it relied on the false statements defendants made in the warranty claims when it paid these allegedly fraudulent claims.

Plaintiff also alleges it inadvertently paid money to defendants that was not due or owed. Plaintiff alleges it mistakenly sent checks to defendants as a result of a typo. Plaintiff alleges it has demanded the return of this money, but defendants have refused to do so.

Based on these alleged facts, plaintiff brings three counts against Mary Haaf and Herb Haaf, Inc. for fraud, money had and received, and breach of contract. In the motions before the Court, defendants move to dismiss the fraud claim for failure to state a claim on the grounds that the claim was not alleged with the requisite specificity; to dismiss all three claims for lack of subject matter jurisdiction because the amount in controversy does not meet the required jurisdictional amount; to dismiss for improper venue; or in the alternative, to transfer to the Western District of Missouri pursuant to 28 U.S.C. § 1404. Defendants also move to strike an exhibit from the complaint pursuant to Federal Rule of Civil Procedure 12(f), because defendants provided the documents contained in the exhibit to plaintiff during settlement negotiations. Plaintiff has opposed each of these motions.

## II. Discussion

### A. Motion to Dismiss for Failure to State a Claim.

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff need

not provide specific facts in support of its allegations, <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." <u>Schaaf v. Residential Funding Corp.</u>, 517 F.3d 544, 549 (8th Cir.), <u>cert</u>. <u>denied</u>, 129 S. Ct. 222 (2008) (citing <u>Twombly</u>, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." <u>Id.</u> at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." <u>Id.</u> at 556.

Claims of fraud have a heightened pleading standard. The Federal Rules of Civil Procedure require a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). <u>See</u> <u>also</u> <u>Abels v. Farmers Commodities Corp.</u>, 259 F.3d 910, 920 (8th Cir. 2001). Although a pleading alleging fraud need not provide anything more than notice of the claim, it must contain "a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." <u>Id.</u> Thus, a plaintiff must plead "'such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" <u>Id.</u> (quoting <u>Bennett v. Burg</u>, 685 F.2d 1053, 1062 (8th Cir. 1982), <u>adhered to on reh'g</u> 710 F.2d 1361 (8th Cir.) (en banc)). <u>See</u> <u>also</u> <u>Drobnak v. Andersen Corp.</u>, 561 F.3d 778, 783 (8th Cir. 2009). Rule 9(b) should be read "in harmony with the principles of notice pleading." <u>Schaller Telephone Co. v. Golden Sky Sys., Inc.</u>, 298 F.3d 736, 746 (8th Cir .2002) (quoting <u>Abels</u>, 259 F.3d

at 920), and "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Commercial Property v. Quality Inns, 61 F.3d 639, 644 (8th Cir. 1995)." See also Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, (8th Cir. 2002).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id; Fed. R. Civ. P. 8(a)(2). Materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

To state in a fraud claim under Missouri law a plaintiff must allege: (1) a defendant made a material representation; (2) with knowledge of its falsity; (3) with intent that plaintiff rely on that representation; (4) that the plaintiff was ignorant of the falsity; (5) that the plaintiff justifiably relied upon the representation; and (6) that plaintiff was damaged by that representation. Cole v. Homier Distributing Co., Inc., 599 F.3d 856, 862 (8th Cir. 2010) (citing Ryann Spencer Group, Inc. v. Assurance Co. of Am., 275 S.W.3d 284, 287 (Mo. At. App. 2008)).

In their motion, defendants argue plaintiff's fraud claim should be dismissed because plaintiff failed to specifically set forth what statements in each of the 375 warrant claims were allegedly false. Defendants also argue that plaintiff failed to plead the time of the fraud with the requisite particularity because plaintiff did not plead the exact date Mary Haaf mailed the claim forms. Defendants also argue the fraud allegations are insufficient in that some of the allegations are based "on information, knowledge, and belief" and plaintiff has not provided the factual basis for the statements.

In the instant case, the Court finds that plaintiff has sufficiently alleged its claim for fraud. As required under Eighth Circuit law, plaintiff alleged the person making the representation – Mary Haaf; the "how" of the fraud –submitting false warranty claims under Goodman's cap replacement program; and a reasonable time frame during which the fraud occurred – from August 21 through October 16, 2009. As for the nature of the false representations, plaintiff alleges that Mary Haaf misrepresented in more than 375 warranty claims that the work required to charge the unit has not been done; the work performed was not necessary; the unit was no longer under warranty; and/or the maximum $200.00 per unit limit under the cap replacement program had already been paid. Plaintiff attached to the complaint a list of the more than 375 allegedly fraudulent warranty claims, with the claim numbers, unit serial numbers, dates of approval, and check numbers. The Court finds under the circumstances of this case that plaintiff has stated a claim for fraud and it need not have listed every alleged misrepresentation for each of the more than 375 warranty claims. Requiring plaintiff to do so would violate the principles of notice pleading. Scaller Tele., 298 F.3d at 746. Upon examination of the complaint and the attached exhibits, the Court finds defendants have adequate notice and sufficient information to respond to plaintiff's fraud allegations U.S. ex rel. Schuhardt v. Washington Univ., 228 F. Supp.2d 1018, 1034 (E.D. Mo. 2002) (the court "does not believe now, nor did it believe at the time of the earlier order, that plaintiffs should be required to provide a specific allegation to substantiate each and every general allegation within the complaint.").

The Court also does not find persuasive defendants' argument that plaintiff failed to allege the timing of the fraud with the requisite specificity. Plaintiff provided a list of the warranty claims at issue, including the dates on which those claims were approved. Plaintiff alleges Mary Haaf sent

the allegedly fraudulent claim forms to Goodman shortly before the claims were approved.

Defendants are critical that plaintiff did not plead the exact date the forms were sent. The dates each

claim form would have been sent, however, would be known only by the defendants – plaintiff

would not know the exact dates on which Mary Haaf mailed each of the warranty claim forms.

Under these circumstances, plaintiff's allegations regarding the timing of the fraud are sufficient.

Drobnak, 561 F.3d at 783-84 ("[w]hen the facts constituting the fraud are peculiarly within the

opposing party's knowledge such allegations may be pleaded on information and belief.") (citing

to Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 668 (8th Cir.2001). In sum,

the Court finds plaintiff's allegations of fraud meet the required pleading standard under Federal

Rule of Civil Procedure Rule 9(b).

      **B.**       **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

In their motion to dismiss for lack of subject matter jurisdiction, defendants argue plaintiff's

complaint should be dismissed because the the amount in controversy is less than the jurisdictional

requirement. In order for the Court to have diversity jurisdiction, the amount in controversy must

exceed $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a). "The district court has

subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the

pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are

greater than $75,000.00." Kopp v. Kopp, 280 F.3d 883, 884 (8th Cir. 2002). When a complaint

appears to allege a sufficient amount in controversy to establish diversity jurisdiction but the amount

in controversy is challenged by the opposing party, the party invoking federal jurisdiction must

prove the requisite amount by a preponderance of the evidence. Trimble v. Asarco, Inc., 232 F.3d

946, 959 (8th Cir. 2000) (overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs.,

Inc., 545 U.S. 546 (2005)), (citing State of Missouri. ex rel. Pemiscot County, Mo. v. Western

Surety Co., 51 F.3d 170, 173 (8th Cir. 1995)).

Defendants argue plaintiff has only alleged $61,850 in damages. Defendants argue Goodman

is $13,150.00 short of the jurisdictional amount, and it cannot aggregate its claim of breach of

contract with its alternative claims of fraud and money had and received to reach the jurisdictional

requirement. The Court agrees that plaintiff cannot aggregate its alternative theories of recovery in

order to meet the required amount in controversy. That said, plaintiff meets the amount in

controversy without aggregating its claims. Plaintiff seeks $61,850 in compensatory damages for

its breach of contract claim, and in the alternative, $18,850.00 in compensatory damages for fraud

and $43,000.00 for money had and received. But plaintiff is also seeking punitive damages, and

punitive damages are included in determining the amount in controversy. Allison v. Security Ben.

Life Ins. Co., 980 F.2d 1213, 1215 (8th Cir. 1992) (citing Bell v. Preferred Life Assur. Society, 320

U.S. 238, 240 (1943)). A claim for punitive damages, however, is scrutinized more closely when

determining the amount in controversy "to ensure that Congress's limits on diversity jurisdiction are

properly observed."Western Surety Co., 51 F.3d at 173 (citing Larkin v. Brown, 41 F.3d 387, 389

(8th Cir. 1994)).

In general, punitive damages are not allowed under Missouri law for claims of breach of

contract. Peterson v. Continental Boiler Works, Inc., 783 S.W.2d 896, 902 (Mo. 1990) ("[t]he

general rule is that punitive damages may not be recovered in breach of contract actions.") (citations

omitted). And the Court is not convinced that plaintiff would be entitled to punitive damages as to

its claim of money had and received. Kubley v. Brooks, 141 S.W.3d 21, 31 (Mo. 2004) ("claim for

money had and received sounds in contract rather than in tort"); but see Bennett v. Tower Grove

Bank & Trust Co., 325 S.W.2d 42, (Mo. 1959) (affirming punitive damages where evidence showed

bank wrongfully retained and cashed check, and used the proceeds for its own benefit).  Punitive

damages are allowed in tort claims, including fraud.  Under Missouri law, punitive damages are

allowed but require "a showing, by clear and convincing proof, of a culpable mental state on the part

of the defendant, either by a wanton, willful or outrageous act, or reckless disregard for an act's

consequences (from which evil motive is inferred)."  Werremeyer v. K.C. Auto Salvage Co., Inc.,

134 S.W.3d 633 (Mo. 2004).

In this case, plaintiff alleges defendants purposely devised a scheme to submit fraudulent

warranty claim forms in order to obtain undeserved money payments from Goodman.  Based on the

facts set forth in the complaint, plaintiff has alleged the requisite state of mind to support punitive

damages as to its fraud claim.  Even assuming plaintiff would not be entitled to punitive damages

as to its claims of contract and money had and received, a finder of fact could legally conclude that

Goodman is entitled to more than $13,150.00 in punitive damages for  its fraud claim.  Werremeyer,

134 S.W.3d 633 at 635 (affirming verdict of $9,000.00 in compensatory damages and $20,000.00

in punitive damages).  Thus, the Court finds there is more than $75,000.00 in controversy in this

case.  As the requirements of 28 U.S.C. § 1332 have been met, defendants' motion to dismiss for

lack of subject matter jurisdiction is denied.

### C.      Motion to Dismiss for Improper Venue

Defendants also contend the complaint must be dismissed because venue does not lie in the

Eastern District of Missouri.  Section 1391(a) states:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may,
> except as otherwise provided by law, be brought only in (1) a judicial where any
> defendant resides, if all defendants reside in the same State, (2) a judicial district in
> which a substantial part of the events or omissions giving rise to the claim occurred,

or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.  28 U.S.C. § 1391(a).

With regard to residency of a corporation, Section 1391(c) further provides:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

In its motion, defendants assert venue is not proper in the Eastern District of Missouri because neither of the defendants resides in this district.  It appears to be undisputed that Mary Haaf does not reside in the Eastern District of Missouri.  The parties contest the residency of Herb Haaf, Inc.  Defendants argue the corporation has insufficient minimum contacts to subject it to personal jurisdiction in the Eastern District of Missouri.  Defendants further contend Herb Haaf, Inc.'s only "business location" is in Jefferson City, which is situated in the Western District of Missouri, and that "[t]he substantial majority of the business engage in by Herb Haaf [ ], Inc. is performed within the Western District of Missouri.  See Doc. 15.  According to defendants, "[n]one of the dealings between Herb Haaf [ ], Inc. and Goodman [ ] that are at issue in this lawsuit occurred in the Eastern District of Missouri."  Id.  In its response, plaintiff argues that venue is proper in the Eastern District under § 1391 because Herb Haaf, Inc. is subject to personal jurisdiction in the Eastern District in that the company has conducted several business transactions in the Eastern District of Missouri, including transactions that form the basis of approximately a third of the allegedly fraudulent warrant claims that are at issue in this suit.

-10-

The Eighth Circuit analyzes personal jurisdiction in two steps. First, the district court is to examine "whether the exercise of jurisdiction is proper under the forum state's long-arm statute." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387-88 (8th Cir. 1991). Second, if the district court finds the state's long-arm statute's requirements are met, the court must determine "whether the exercise of personal jurisdiction comports with due process." Id. at 1388. Jurisdiction under the Missouri long-arm statute merges with the analysis for due process. The Missouri legislature's "ultimate objective was to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause." Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir.2000) (quoting State ex rel. Deere and Co. v. Pinnell, 454 S.W.2d 889, 892 (Mo.1970)); see also State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 876 (Mo.1982). Therefore, the issue before this Court is whether Herb Haaf, Inc.'s contacts within the Eastern District are such that requiring the company to appear before this Court comports with due process.

"Due process requires that there be minimum contacts between the nonresident defendant and the forum [district] such that the assertion of personal jurisdiction is consistent with traditional notions of fair play and substantial justice." Wells Dairy, Inc. v. Food Movers Intern., Inc., 607 F.3d 515, 518 (8th Cir. 2010) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92,(1980); International Shoe Co. v. Washington, 326 U.S. 310, 316,(1945)). "Sufficient contacts exist when the defendant's conduct and connection with the forum [district] are such that [it] should reasonably anticipate being haled into court there." Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir.1994) (quoting Soo Line R.R. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir.1991)). To support a finding of reasonable anticipation, "there must be some

act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [district] thus invoking the benefits and protections of its laws." Id. at 818-19 (quoting Soo Line R.R., 950 F.2d at 529).

The Eighth Circuit has established a five-part test for measuring a defendant's contacts with the forum at issue: "(1) the nature and quality of the contacts with the forum [district]; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum [district] in providing a forum for its residents; and (5) the convenience of the parties." Id. at 819 (citing Land-O-Nod Co. v. Bassett Furniture Indus., 708 F.2d 1338, 1340 (8th Cir.1983)). Personal jurisdiction may be established by general jurisdiction or specific jurisdiction. Wells Dairy, 607 F.3d at 518. "[G]eneral jurisdiction refers to the power of [the forum] to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose," while specific jurisdiction requires that the cause of action arise from or relate to a defendant's actions within the forum district. Bell Paper Box, Inc., 22 F.3d at 818 (internal quotation, citation, and alterations omitted).

Here, the Court finds defendant Herb Haaf, Inc. has sufficient contacts within the Eastern District of Missouri to subject it to personal jurisdiction in this district. Plaintiff has provided evidence that Herb Haaf, Inc. submitted over 100 warranty claims based on equipment located in the Eastern District of Missouri. In other words, Herb Haaf, Inc. has a number of customers in the Eastern District of Missouri, and the company has represented that it traveled to and serviced over 100 units of equipment on the premises of these customers, who located in this district. Defendants do not dispute that the company travels to this district to repair equipment, but they characterize the

business as "sporadic" and respond that the "substantial majority" of Herb Haaf's Inc.'s business is conducted in the Western District of Missouri.

Defendant's response is insufficient to rebut plaintiff's evidence. Defendants provided no evidentiary support for their assertion that Herb Haaf, Inc.'s business in the Eastern District of Missouri is "sporadic." For example, defendants did not show how many service visits the company makes over a set period of time and what percentage of those visits are located in the Eastern District of Missouri. Reviewing the evidence the Court has before it, the Court finds that transactions comprising over 100 warranty is not "sporadic." Furthermore, contrary to defendants' argument, the test is not where the "substantial majority" of the company's business is performed, but rather whether the defendant's conduct and connection with the district are such that Herb Haaf Inc. "should [have] reasonably anticipate[d] being haled into court [in this district]." Bell Paper Box, Inc., 22 F.3d at 818. From the record before the Court, it is apparent Herb Haaf, Inc. has repeatedly transacted business in Eastern District of Missouri. The company has purposely availed itself of the privileges of the Eastern District such that it would be subject to personal jurisdiction in this district. Defendants' motion is denied.

**D.     Motion to Transfer Venue**

Defendants seek to have the case transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Western District of Missouri. Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The determination whether to grant or deny a request to transfer under § 1404(a) is within the sound discretion of the trial court. Hubbard v. White, 755 F.2d 692, 694 (8th Cir. 1985).

It appears to be undisputed that venue is proper in the Western District of Missouri. Mary Haaf resides in Jefferson City, which is located in the Western District and Herb Haaf, Inc.'s physical location is also in Jefferson City. The other factors, however, do not weigh in favor of transfer. In general, federal courts are give "considerable deference to a plaintiff's choice of forum, and thus the party seeking a transfer under § 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997). See also Biometics, LLC v. New Womyn, Inc., 112 F. Supp.2d 869, 875 (E.D.Mo. 2000). The party seeking transfer is required to make a "clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed." Houk v. Kimberly-Clark Corp., 613 F. Supp. 923, 927 (E.D.Mo. 1985). See also May Dep't Stores Co. v. Wilansky, 900 F. Supp. 1154, 1166 (E.D.Mo. 1995). A transfer which would merely shift the inconvenience from one party to another should not be granted. Houk, 613 F. Supp. at 928.

Section 1404(a) sets forth three broad categories of interests that must be considered in ruling on a motion to transfer: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) interests of justice. Terra Int'l, 119 F.3d at 691. Of these, convenience of the witnesses is considered a primary, if not the most important consideration. Biometics, 112 F. Supp.2d at 876; May Dep't Stores, 900 F. Supp. at 1165. The Court, however, is not limited to consideration of these three enumerated factors. Section 1404(a) requires a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, 119 F.3d at 691. "The 'myriad of factors' which may be considered include access to sources of proof, availability of compulsory process for witnesses, expenses attendant to the production of witnesses, the

governing law, the possibility of delay and prejudice if a transfer is granted, and the relative advantages and obstacles to a fair trial." Continental Research Corp. v. Drummond Am. Corp., 2007 WL 4287873, at *3 (E.D.Mo. Dec. 6, 2007) (citing to May Dep't Stores, 900 F. Supp. at 1165; Houk, 613 F. Supp. at 927; Woolridge v. Beech Aircraft Corp., 479 F. Supp. 1041, 1057 (W.D.Mo. 1979)). Furthermore, there are various "public factors" which can be considered in the interest of justice, which include "the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, . . . the avoidance of unnecessary problems in conflict of laws, and the unfairness of burdening citizens in an unrelated forum with jury duty." Id. (citing to Piper Aircraft v. Reyno, 454 U.S. 235, 241 (1981)).

In support of transfer, defendants argue the Western District of Missouri is more convenient for the parties because Mary Haaf resides and Herb Haaf, Inc. is headquartered in the Western District. They argue the alleged misconduct occurred in the Western District, and there is no relevant connection between the dispute and the Eastern District of Missouri. They also argue all of the defendants' documentary evidence is located in the Western District.

Plaintiff counters that it maintains a regional office in the Eastern District of Missouri, and the majority of its documents at issue in this case are located here. Furthermore, plaintiff contends that approximately 30% of the allegedly fraudulent claims were based on work purportedly done in this district. Plaintiff also represents that it intends to call as witnesses a number of its employees who work in the St. Louis regional office, as well as non-party witnesses who reside in this district and who placed calls to Herb Haaf ,Inc. for service of Goodman products.

Based on the relative locations of the parties, it is apparent that litigating in the Eastern District of Missouri is more convenient for plaintiff, and litigating in the Western District is more

convenient to defendants. But § 1404 is not intended to shift inconvenience one party to another. Houk, 613 F. Supp. at 928. Despite defendants' contention otherwise, plaintiff does have a connection to this district, and defendants have not made a "clear showing that the balance of interests weighs in favor of the proposed transfer." Id. They have provided no compelling reason for transfer, such as the location of non-party witnesses or other obstacles that might prejudice their case. In sum, the Court finds defendants have not met their burden of establishing that transfer is warranted in this case, and the Court will not disturb plaintiff's choice of forum. Defendants' motion to transfer venue is denied.

**E.     Motion to Strike Exhibit**

Defendants have also moved, pursuant to Federal Rule of Civil Procedure 12(f), to strike Exhibit C from the complaint. Exhibit C contains invoices from Herb Haaf, Inc. to its customers, and warranty claim forms submitted to Goodman. Under Federal Rule of Civil Procedure 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike, however, are not favored and are infrequently granted, because they propose a drastic remedy. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) ("[s]triking a party's pleading . . . is an extreme and disfavored measure."); Stanbury Law Firm, P.A. v. Internal Revenue Service, 221 F.3d 1059, 1063 (8th Cir. 2000). Nonetheless, resolution of such a motion lies within the broad discretion of the Court. Id. A matter should not be stricken unless it clearly can have no possible bearing on the subject matter of the litigation. 2 James W. Moore, et al., Moore's Federal Practice §12.37[3] (3rd ed. 2008). If there is any doubt whether the matter may raise an issue, the motion should be denied. Id. If

allegations are redundant or immaterial, they should be stricken only if prejudicial to the moving

party.  Id.

Defendants argue the invoices and warranty claim forms attached as Exhibit C should be

stricken because they are inadmissible under Rule 408 of the Federal Rules of Civil Procedure in

that they were complied and provided to plaintiff during settlement negotiations.  The issue before

the Court on a Rule 12(f) motion, however, is not whether evidence the documents in the exhibit are

admissible, but rather whether they are immaterial, impertinent, and scandalous matter.  Rule 12 is

directed to allegations in a complaint, not to the admissibility of evidence.  North Face Apparel

Corp. v. Williams Pharmacy, 2010 WL 546318, at *2 (E.D.Mo. Feb. 9, 2010).

In any event, Rule 408 would not apply to the documents at issue.  Rule 408 of the Federal

Rules of Evidence governs "Compromise and Offers to Compromise" and states:

> Evidence of the following is not admissible on behalf of any party, when offered to
> prove liability for, invalidity of, or amount of a claim that was disputed as to validity
> or amount, or to impeach through a prior inconsistent statement or contradiction:  (1)
> furnishing or offering or promising to furnish –or accepting or offering or promising
> to accept–a valuable consideration in compromising or attempting to compromise the
> claim; and (2) conduct or statements made in compromise negotiations regarding the
> claim, except when offered in a criminal case and the negotiations related to a claim
> by a public office or agency in the exercise of regulatory, investigative, or
> enforcement authority.  Fed. R. Evid. 408.

While the documents may have been complied and provided to plaintiff during settlement

negotiations, they do not appear to have been prepared for the settlement negotiations.  Upon

examination, it would seem the documents were created by Herb Haaf, Inc. during the regular course

of its business.  "Rule 408 does not require the exclusion of any evidence otherwise discoverable

merely because it is presented in the course of compromise negotiations."  Kautsch v. Premier

Communications, 2008 WL 539324 , at *3 (W.D. Mo. Feb. 26, 2008) (citing to United States v. Wilford, 710 F.2d 439 n. 21 (8th Cir.1983)).  Defendants' motion to strike is denied.

### III.  Conclusion

Defendants' motion to dismiss plaintiff's fraud claim for failure to state a claim is denied. The Court finds plaintiff has stated a claim for fraud with the requisite specificity under Rule 9 of the Federal Rules of Civil Procedure.  Defendants' motion to dismiss for lack of subject matter jurisdiction is also denied.  The Court finds the amount in controversy in this case exceeds $75,000.00.  The Court also finds there is venue in the Eastern District of Missouri based on the fact that defendant Herb Haaf, Inc. has conducted business within this district that would subject the company to personal jurisdiction in the district.  Defendants' motion to transfer pursuant to 28 U.S.C. §1404 is also denied.  Under the circumstances of this case, transfer to the Western District of Missouri is not warranted.  The Court also denies defendants' motion to strike Exhibit C to the complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Mary Haaf and Herb Haaf Heating and Cooling, Inc.'s motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim is **DENIED.** [Doc. 9]

**IT IS FURTHER ORDERED** that  defendants Mary Haaf and Herb Haaf Heating and Cooling, Inc.'s motion to dismiss for improper venue, or in the alternative to transfer to the Western District of Missouri is **DENIED.** [Doc. 11]

**IT IS FURTHER ORDERED** that  defendants Mary Haaf and Herb Haaf Heating and

Cooling, Inc.'s motion to strike Exhibit C to the Complaint is **DENIED.** [Doc. 13]


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  __19th__  day of October, 2010.